**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02896-CMA-MJW

SEAN McALLISTER,

    Plaintiff,

v.

DETECTIVE MICHAEL S. KELLOGG, in his individual and official capacities,
POLICE OFFICER MICHAEL REIFSTECK, in his individual and official capacities,
POLICE OFFICER ROBERT CASH, in his individual and official capacities, and
THE CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

---

**ORDER GRANTING MOTION TO DISMISS**

---

Plaintiff Sean McAllister alleges that his constitutional rights were violated when Denver police officers included materially misleading facts in an arrest affidavit that served as the basis of a warrant for his arrest. He further alleges that this individual incident is part of a larger, systemic problem at the Denver Police Department.

Plaintiff might be able to plead a plausible case that the affidavit is materially misleading, but he needs to do so by alleging more specific facts. Further, his allegation that this incident is emblematic of a systemic problem is wholly insufficient: it will be considered only if Plaintiff provides more factual support. For these reasons the Court grants Defendants' motion to dismiss.

## I. BACKGROUND[1]

The events giving rise to this case began on October 12, 2011, when Plaintiff was arrested on suspicion of a domestic assault of his then-wife, Hilary McAllister.[2] The assault allegedly occurred at the couple's residence located at 20 Bridge Street in Breckenridge, Summit County, Colorado. Plaintiff remained in custody for two days following his arrest. When he was released on October 14, a judge in Summit County issued a mandatory protection order against him. (Doc. # 11, ¶¶ 10-11.)

The October 14 protection order lists Hilary McAllister as the only "protected party" and contains three provisions relevant here: (1) Plaintiff is prohibited from "contacting or directly or indirectly communicating with the victim(s)"; (2) Plaintiff "[s]hall vacate the home of the victim(s), stay away from the home of the victim(s), and stay away from any other location the victim(s) is/are likely to be found;" and (3) Plaintiff "may have contact [with the victim] through [a third-party] to schedule visitation w[ith the] children." (Doc. # 19 at 16 (capitalization omitted).)

When Plaintiff was released from jail, he went to an apartment located at 1055 N. Sherman Street in Denver, where he encountered his two-year-old son and seventeen-year-old stepdaughter, Madisonn Welch. When Plaintiff arrived, Ms. Welch

---

[1] The Court accepts all well-pleaded facts from the amended complaint as true for purposes of the instant motion. Further, the amended complaint refers to a number of documents that are central to Plaintiff's claim. Defendants have provided those documents in their motion and their authenticity is not disputed by Plaintiff. The Court therefore considers these additional records in resolving the instant motion to dismiss. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[2] Because there are two parties with the last name McAllister, this Court will refer to Sean McAllister as Plaintiff.

left the apartment with Plaintiff's son and reported the encounter to Ms. McAllister, who in turn called the police and alleged Plaintiff had violated the terms of the protection order. (Doc. # 1, ¶¶ 11-12.)

In response to Ms. McAllister's call two police officers interviewed her at the 1055 N. Sherman Street address. Both officers—now defendants in this suit—filed reports of their interviews on October 14.

One report came from Officer Michael Reifsteck. It contains the recent narrative of Plaintiff's domestic troubles and Ms. Welch's encounter with Plaintiff. It then explains a number of facts about the McAllisters' rather complicated living situation before the alleged domestic assault. In particular, it relates: (1) the McAllisters' main residence had been in Breckenridge; (2) they had a "shared apartment" at 1055 N. Sherman Street; and (3) Plaintiff leased a second apartment at 1250 N. Sherman Street, where he stayed after he started having relationship problems with Ms. McAllister. (Doc. # 19 at 23-24.)

Officer Reifsteck's report also reveals contradictory representations about the scope of the protection order as of October 14. On the one hand, Officer Reifsteck reported that Ms. McAllister was "under the firm belief that her kids are included in the restraining order"—a belief that was shared by a representative of Summit County Social Services, who was contacted by Officer Reifsteck and was similarly "under the assumption that the kids are included in the restraining order." On the other hand, Officer Reifsteck's report noted that his police car's data terminal revealed that Plaintiff "may have visitation with the children." (Doc. # 19 at 24.)

3

Officer Robert Cash provided back-up to Officer Reifsteck and turned in a second report of his interview with Ms. McAllister. Like Officer Reifsteck, Officer Cash described the domestic violence allegation, along with Ms. Welch's encounter with Plaintiff. At the same time, although left unmentioned by either party, Officer Cash's report is somewhat in tension with Officer Reifsteck's as to who was living where on October 14: although Officer Reifsteck's report lists 1055 N. Sherman Street as the location of McAllister's **shared** apartment, Officer Cash states that the 1055 N. Sherman Street is Plaintiff's "primary residence." Officer Cash also noted that Plaintiff resided in a different apartment but did state "these parties share three residences." Officer Cash provided no further information on the protection-order violation, made no reference to the terminal report or witness testimony related by Officer Reifsteck, and simply concluded "it was unknown if a [protective order] violation actually occurred at this point." (Doc. # 19 at 25.)

From the record presented here, it does not appear that either Officer Reifsteck or Officer Cash had further duties related to the investigation of this incident. Nevertheless, on October 16, Detective Michael Kellogg, the third individual defendant named in this suit, conducted a follow-up investigation that relied in part on the officers' reports. (Doc. # 19 at 26.)

On October 18, while Detective Kellogg was investigating the alleged violation in Denver, Summit County prosecutors moved to modify the protection order so that it would include as "protected parties" Ms. Welch and the two children Plaintiff had fathered with Ms. McAllister. (Doc. # 19 at 18-19.) That same day, a Summit County

judge granted the protection order in part and denied it in part: in a handwritten order, the judge added Ms. Welch but declined to add Plaintiff's biological children. (*Id.* at 21.)

On October 24, Detective Kellogg submitted an affidavit in support of an arrest warrant for Plaintiff for a "protection order violation." The affidavit recounts the same background information about the domestic violence allegations and Plaintiff's presence at 1055 N. Sherman Street. The affidavit also noted, that based on the police reports of Officers Reifsteck and Cash, Ms. McAllister "believed" the protection order included her children, but that "Court notes" state that Plaintiff "may have contact [with the victim] through [a third-party] to schedule visitation w[ith the] children." (Doc. # 19 at 26.) The affidavit then concludes as follows:

> On October 23, 2011, at approximately 12:10 p.m. affiant met with Hillary McAllister and Madisonn Welch. Madisonn Welch made positive identification of Sean McAllister for this case file. Madisonn also completed a written statement about Sean being at 1055 N. Sherman Street, # 205, on 10/14/2011 between 1:00 and 1:30 p.m. Hilary had a copy of the protection order issued out of Summit County. Order shows Madisonn Welch as an additional protected party.
>
> Order reads in part: Shall vacate the home of the victim(s), stay away from the home of the victim(s), and stay away from any other location the victim(s) is/are likely to be found.

(*Id.* at 27.)

The two separate paragraphs quoted above identify two potential bases for a violation. The first basis, that Plaintiff had improper contact with Ms. Welch, who was a protected party, is difficult to square with the apparent narrative of events described above. To be sure, Ms. Welch **became** a protected party on October 18, but only after Plaintiff's alleged contact with her on October 14. Thus, while the statement about

5

Ms. Welch that appears in the affidavit is technically true as of October 23, it is unclear how it would give rise to a violation. Further, like Officer Reifsteck's report, there is an unacknowledged internal contradiction in the affidavit between what the aforementioned "Court notes" stated about the scope of the protection order and what Ms. McAllister and her daughter represented about the same.

The second basis for the violation—Plaintiff's presence at 1055 N. Sherman Street Apartment (*i.e.*, a "location the victim(s) is/are likely to be found")—is somewhat easier to square with the narrative contained in the police reports. Although the reports are inconsistent as to which address on N. Sherman Street was the most likely place Plaintiff slept most nights he was in Denver, they are in agreement that the three residences are "shared" between the couple.

An arrest warrant issued on the basis of this affidavit, resulting in Plaintiff's arrest on October 26. In his complaint, Plaintiff never identifies exactly who effectuated the arrest or how it happened. All the complaint states is that that "Defendants detained and falsely arrested" Plaintiff for the protective order violation, (*id.*, ¶ 30), and that "Defendants intentionally, knowingly, recklessly, and excessively subdued, restrained, detained and falsely arrested Plaintiff, without any reasonable justification or probable cause," (*id.*, ¶ 31).[3]

---

[3] Although Plaintiff states that he was "excessively subdued," he has not alleged any sort of excessive force claim, he appears to limit his Fourth Amendment claim to the false arrest theory.

The amended complaint also reveals that Plaintiff's protection-order violation case was quickly dismissed after his arrest. As a result of the arrest, he spent 4-5 hours in jail. (Doc. # 11, ¶ 23.)

Plaintiff argues that his arrest gives rise to two types of constitutional violations, which he pleads in his amended complaint. (Doc. # 11.) First, he alleges that the three above-referenced police officials violated his constitutional rights by effectuating an "arrest without probable cause." (*Id.*, ¶ 28.) Second, relying on *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), Plaintiff alleges that the City of Denver as a municipality is liable for engaging in a policy or custom that allows for the same type of unconstitutional behavior. (*Id.*, ¶¶ 33-44.) Defendants challenge the sufficiency of both of these claims in the instant motion to dismiss. (Doc. # 19.) The Court considers the sufficiency of each claim in turn below.

## II. STANDARD OF REVIEW

This Court's evaluation of the Plaintiff's complaint is governed in part by Federal Rule of Civil Procedure 8(a)(2), which states that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting

and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

### III.  ANALYSIS

**A.    FALSE ARREST CLAIM**

Plaintiff alleges that the individual officer Defendants violated his Fourth Amendment rights because of defects in the affidavit used as the basis for the arrest warrant. Plaintiffs have two defenses to this claim, which the Court considers in turn.

      1.    Causation—Officers Reifsteck and Cash

First, Defendants argue that the claims against Officers Reifsteck and Cash fail because there are no allegations that these defendants were involved in the preparation of the arrest affidavit or the effectuation of the arrest.

As Defendants reason, liability for a constitutional tort such as the instant one requires some causal relation between the official act committed and the constitutional right violated. That "requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009) (discussing causation in the context of a search warrant).

For a number of reasons, Plaintiff has inadequately pled causation as to these two defendants. First, even viewing the well-pled factual allegations in Plaintiff's favor, it is unclear how these officers' involvement in this case extended beyond the date they filed their reports—and the reports themselves are not self-evidently misleading and

8

markedly non-committal on the existence of a protection order violation. Second, Plaintiff makes no specific allegation as to how either of these officers participated in the actual arrest of Plaintiff: indeed, Defendants strenuously argue that these officers were not involved in the actual arrest and Plaintiff seems to concede as much in his response. *See* (Doc. # 25 at 6) (noting that "other people carried out" the actual arrest). Finally, the record evidence establishes that Detective Kellogg—not either of the other defendants—wrote the arrest affidavit, and there is no allegation that the detective had any assistance in this process.

In sum, if Plaintiff wants to pursue claims against Officers Reifsteck and Cash, he must plead with greater specificity facts giving rise to the plausible inference that these officers "knew or reasonably should have known" that acts they committed would have caused him to be falsely arrested.

    2.    <u>Qualified Immunity—Detective Kellogg</u>

Second, as to Detective Kellogg, Defendants mount a typical two-prong defense to liability for the constitutional tort, arguing that they are entitled to qualified immunity on this constitutional claim because: (1) Plaintiff has not sufficiently pleaded that Defendants violated any constitutional rights, and (2) even if such a constitutional violation occurred, Plaintiff has not sufficiently pleaded that it was "clearly established" at the time of his arrest. *See, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (reiterating this framework).

In response, Plaintiff's position is that the violation of his constitutional rights was the addition of "materially misleading information" in the affidavit, a constitutional

violation that was clearly established at the time of Plaintiff's arrest. *Salmon v. Schwarz*, 948 F.2d 1131, 1139 (10th Cir. 1991).

Plaintiff argues that Detective Kellogg's representation about Ms. Welch's name appearing on the protection order is plausibly misleading because, while technically true, it is deceptive because Plaintiff alleges he only had contact with Ms. Welch **before** she was added to the protection order. Defendants respond that, even assuming the representation about Ms. Welch is false or misleading, it is immaterial, given the fact that the affidavit points to a second independent basis for a protection order violation: that Plaintiff appeared at the 1055 N. Sherman Street, which was a place his wife—and the subject of the protective order—was "likely to be found."

Plaintiff offers no rejoinder to this argument, opting not even to mention it in his response to Defendants' motion. He also fails to take a firm position on who typically lived at 1055 N. Sherman Street—Plaintiff equivocates and says it his "Denver residence" (Doc. # 11, ¶ 12)—even through at least one police report stated that he shared the apartment with Ms. McAllister and even though Ms. McAllister had access to this apartment and left her children there on October 14.

For the above reasons, Plaintiff has insufficiently pled a false-arrest claim. If he wants to try again, Plaintiff must plausibly state facts demonstrating that the second rationale for the protection order violation is false or immaterial and should explicitly

address why 1055 N. Sherman Street was not a location at which Ms. McAllister was "likely to be found."[4]

**B.    *MONELL* CLAIM**

Plaintiff's *Monell* claim for municipal liability is easier to resolve.  It fails because it presents a textbook example of a series of "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.  The claim hardly merits further analysis from this Court because it merely cobbles together some holdings from prominent cases implicating *Monell* liability and then baldly asserts that the same types of systemic problems considered in those cases must be the reason that the warrant issued in Plaintiff's case.  This is insufficient for purposes of pleading a *Monell* claim: not every individual constitutional violation is the product of some sort of systemic problem at the municipal level.

As concrete example of this problem, the Court points to Plaintiff's allegation that "Defendant Denver developed and maintained law enforcement related policies, procedures, customs, and/or practices exhibiting or resulting in a deliberate indifference to the constitutional rights of persons in the City and County of Denver, which proximately caused the violation of Plaintiff's constitutional rights."  (Doc. # 11, ¶ 37.)

This allegation—so generic that it could be copied and pasted into any complaint that also asserts a claim of individual liability for a constitutional tort—raises a wealth of

---

[4]  Indeed, on the basis of the record before it, the Court is tempted to hold that further amendment would be futile.  At the same time, given the contradictions in the record presented (some of which were missed by the parties) and the possibility that Plaintiff may be able to allege facts that are not contained in the instant record, the Court declines to take this step at this time.

11

questions but provides a dearth of answers. How do leaders or decision-makers at the Denver Police encourage or tolerate the same type of misleading statements in police reports? What are the explicit policies that enable this constitutional violation? Or is it more of a custom tacitly condoned by the department, instead of a policy? What is the exact link between these apparent policies or customs and the violation that occurred here?

In sum, Plaintiff must answer at least some of these questions or otherwise provide more of a factual basis to support these allegations if he wishes to pursue this claim.

## IV. **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 19) is GRANTED and Plaintiff's two claims are DISMISSED WITHOUT PREJUDICE.

FURTHER ORDERED that should Plaintiff wish to file an Amended Complaint, he must do so **by no later than October 8, 2014**.

DATED: September 17, 2014

BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge